PITTMAN, Judge.
 

 Deidra N. Crum (“the borrower” or “Borrower”) appeals from a summary judgment entered by the Mobile Circuit Court in favor of LaSalle Bank, N.A. (“the assignee”), on its ejectment claim. We affirm.
 

 The operative facts are undisputed. On December 14, 2006, the borrower, in consideration for a loan of $112,800 (“the loan”) from Nationpoint, a division of National City Bank, N.A. (“the lender” or “Lender”), executed a promissory note agreeing to repay the loan to the lender in monthly installments over a 30-year period and also executed a purchase-money-mortgage instrument concerning 2 parcels of real property in Mobile County (“the property”). Although purchase-money-mortgage instruments typically name lenders as mortgagees, the pertinent mortgage instrument executed by the borrower in this case actually named a separate corporation, Mortgage Electronic Registration Systems, Inc. (“MERS”), as the mortgagee of the property. The mortgage instrument contained the following pertinent provisions:
 

 “... MERS is a separate corporation that
 
 is acting solely as a nominee for Lender
 
 and Lender’s successors and assigns.
 
 MERS is the mortgagee under this Security Instrument.
 

 [[Image here]]
 

 “This Security Instrument
 
 secures to Lender:
 
 (i) the repayment of the [l]oan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower’s covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably
 
 mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender’s successors and assigns) and to the successors and assigns of MERS,
 
 with power of sale, the ... property....
 

 [[Image here]]
 

 “...
 
 Borrower understands and agrees that
 
 MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom,
 
 MERS (as nominee for Lender and Lender’s successors and assigns) has the right:
 
 to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the [property; and
 
 to take any action required of
 
 
 *268
 

 Lender
 
 including, but not limited to, releasing and canceling this Security Instrument.”
 

 (Emphasis added.) The mortgage instrument further expressly provided that the note, together with the mortgage, could be sold without notice to the borrower and that, upon the borrower’s default, the property could be publicly auctioned under a power of sale.
 

 On February 2, 2008, MERS, as nominee for the lender, executed an assignment in favor of the assignee (acting as a trustee of a designated mortgage-loan trust). That assignment provided, in pertinent part:
 

 “[MERS] hereby assigns unto [the as-signee] the ... Security Deed having an original principal sum of $112,800.00 [plus] interest, secured thereby, [together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and [MERS] hereby grants and conveys unto the ... [assignee [its] beneficial interest under the Security Deed.
 

 “To have and to hold
 
 the said Mortgage and Note,
 
 and also the said property unto the ... [assignee forever, subject to the terms contained in said Mortgage and Note.”
 

 (Emphasis added.)
 

 Upon the borrower’s default, the assign-ee initiated foreclosure proceedings as to the mortgage on the property by giving notice in a newspaper of genei'al circulation in Mobile County. On April 18, 2008, the property was auctioned, and the as-signee placed the highest bid for the property ($118,347.85); after a foreclosure deed was issued to the assignee, the assignee sent to the borrower a demand for possession of the property, but the borrower has failed or refused to surrender the property to the assignee.
 

 On May 6, 2008, the assignee sued the borrower, seeking possession of the property, damages resulting from the borrower’s alleged wrongful detention of the property, and a declaration that the borrower had forfeited her statutory redemption rights by virtue of having failed to vacate the property. After the borrower had answered the complaint, the assignee moved for a summary judgment in its favor; that motion was supported by an affidavit of one of its employees who testified that the property had been lawfully acquired via foreclosure and that the borrower had failed to comply with the assign-ee’s demand for possession. The borrower filed a response in opposition, contending that under the pertinent mortgage and assignment documents (which the borrower filed in the trial court), the assignee had not acquired the power to undertake foreclosure proceedings. Notably, however, the borrower did not submit the note she had executed. The trial court, after a hearing, entered an order stating that the assignee’s summary-judgment motion was to be granted and directed the assignee’s counsel to draft a conforming judgment, which the trial court subsequently entered; from that judgment, the borrower has appealed. The borrower’s appeal was transferred to this court by the Alabama Supreme Court pursuant to Ala.Code 1975, § 12-2-7(6).
 
 [1]
 

 The borrower, on appeal, does not dispute that she was in default of her
 
 *269
 
 repayment obligations. Rather, in an effort to impugn the validity of the assign-ee’s title, she reiterates as her first issue on appeal her contention, first made in the trial court, that the assignee did not have the power to sell the property in response to her default. Under Ala.Code 1975, § 35-10-12, which superseded Ala.Code 1975, § 35-10-1 (a similarly worded statute), with respect to mortgages executed in 1989 or later, a power to sell lands given in any mortgage “is part of the security” and may be exercised “by any person, or the personal representative of any person who, by assignment or otherwise,
 
 becomes entitled to the money thus secured
 
 ” (emphasis added). The borrower contends that because MERS, which was specified in the mortgage instrument as the lender’s nominee and as the mortgagee, was not shown to have owned the debt, MERS could not convey any right to the assignee whereby the assignee would, in the words of the statute, have “become[ ] entitled to the money ... secured” by the mortgage. The borrower cites
 
 Carpenter v. First National Bank of Birmingham,
 
 236 Ala. 213, 215, 181 So. 239, 240 (1938), as supporting the proposition that “an agent of [a mortgage] holder to whom the mortgage is delivered merely for the purpose of foreclosure, having no ownership of the debt, is not authorized to foreclose in his own name, and execute a deed in his name to the purchaser.”
 

 We perceive two factors that distinguish this case from
 
 Carpenter.
 
 First, in this case, MERS and the assignee were not delivered a mortgage instrument by a mortgagee “merely for” the purpose of effecting a “foreclosure,” as was apparently the case in
 
 Carpenter.
 
 MERS was instead expressly acknowledged by the borrower in the mortgage instrument itself as not only having “any or all of [the lender’s] interests” in the mortgaged property, but also as having the power “to take any action required of’ the lender. The mortgage instrument further expressly provided that the note and the mortgage could be sold without prior notice to the borrower, and the assignment by MERS to the assignee of the mortgage, the note, and “all moneys” due was undertaken for consideration that included a $10 payment to MERS. Thus, taken together, the pertinent documents indicate (a) that MERS was authorized to perform any act on the lender’s behalf as to the property, including selling the note and the mortgage to a third party; and (b) that MERS fully exercised that power in favor of the assignee for valuable consideration.
 
 [2]
 

 Second, the rule of
 
 Carpenter
 
 assumes that there has been a divergence in the legal and equitable ownership of a debt and the security for the repayment of the debt. The generally prevailing common-law rule, however, is that “a transfer of a mortgage also transfers the obligation the mortgage secures unless the parties to the transfer agree otherwise.”
 
 Restatement (Third) of Property: Mortgages
 
 § 5.4(b) (1997);
 
 see also id.
 
 at comment c, illustration 5 (when mortgage assignment makes no mention of a note, ownership of the note will pass to the assignee with the mortgage). This principle of law is recognized in Alabama as well.
 
 See Seabury v. Hemley,
 
 174 Ala. 116, 121, 56 So. 530, 531 (1911) (assignment of mortgage held “broad enough to include the [secured] debt[] in the absence of any evidence showing a separate or different assignment of the note”). Thus, it was stated in
 
 Union Bank & Trust Co. v. Thompson,
 
 202 Ala. 537, 538, 81 So. 39, 40 (1919), following
 
 Seabury,
 
 that no party, other
 
 *270
 
 than an innocent purchaser of notes evidencing the secured debt, would be in a position to raise the question “whether or not the debt had been assigned.”
 

 The
 
 Restatement
 
 acknowledges that the general rule under which a note will be deemed assigned along with a mortgage will apply “[e]xeept as otherwise required by the Uniform Commercial Code.”
 
 Restatement (Third) of Property: Mortgages
 
 § 5.4(b). In the second issue presented in her brief, the borrower, for the first time, argues that the note she executed was a “negotiable instrument” under Alabama’s Uniform Commercial Code and that the assignee did not properly acquire the note via negotiation. Assuming, without deciding, that
 
 Thompson
 
 would permit the borrower to question the mechanism by which the assignee acquired the right to exercise the power of sale in the mortgage, it is well settled that an appellate court will not reverse a trial court’s judgment based upon arguments not presented to the trial court and asserted for the first time on appeal.
 
 Andrews v. Merritt Oil Co.,
 
 612 So.2d 409, 410 (Ala.1992). Even had the borrower’s Uniform Commercial Code argument been properly préserved for appellate review, however, the record does not contain the pertinent note executed by the borrower; thus, we cannot determine, as a factual matter, whether the note contained only a promise to pay money to order at a definite time or whether the note also required the borrower to perform other acts in addition to paying money so as to take the note outside the definition of a “negotiable instrument” under the Alabama Uniform Commercial Code.
 
 See
 
 Ala.Code 1975, § 7-3-104(a).
 

 In sum, the materials submitted by the assignee in support of its summary-judgment motion made a prima facie showing that it had acquired title to the property via its bid at an auction authorized under its power of sale after the borrower had defaulted on her repayment obligations. Although the borrower attempted in the trial court to rebut the proposition that the assignee had lawfully acquired title by adducing evidence that MERS, the party from whom the assignee had acquired its rights in the property, did not have the authority to exercise the power of sale afforded in the mortgage, there is no genuine issue of material fact that MERS assigned to the assignee all the rights formerly held by it and by the lender. Thus, we conclude that the trial court did not err in rendering a summary judgment in favor of the assignee.
 

 AFFIRMED.
 

 THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . Although the borrower has sought relief under the United States Bankruptcy Code, the court having jurisdiction over the borrower’s bankruptcy proceedings has expressly permitted the borrower to prosecute her appeal from the trial court's judgment — a fact that was revealed to this court only after the appeal had been submitted for decision.
 

 [2]
 

 . Those facts also render the unreported New York trial-court opinion in
 
 LaSalle Bank, N.A. v. Lamy,
 
 12 Misc.3d 1191(A), 824 N.Y.S.2d 769 (table) (Sup.Ct.2006), inapposite.